1
2
3
4
5
6
7       UNITED STATES DISTRICT COURT
8       SOUTHERN DISTRICT OF CALIFORNIA
9
10  MICHAEL JOSEPH RHINEHART,              Case No.:  22-cv-0678-JLS-MMP
11                          Plaintiff,    **REPORT AND**
12                                        **RECOMMENDATION**
    v.                                    **RECOMMENDING THE COURT**
13                                        **GRANT DEFENDANTS' MOTION**
    W.L. MONTGOMERY, et al.,              **FOR SUMMARY JUDGMENT**
14
15                          Defendants.
16
17
18
19

20          This Report and Recommendation is submitted to United States District Judge Janis

21  L. Sammartino pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the

22  United States District Court for the Southern District of California. Pending before the

23  Court is M. Arvizu and J. Rodriguez's (collectively "Defendants") Motion for Summary

24  Judgment. ECF No. 57. For the reasons set forth herein, the Court **RECOMMENDS** the

25  Motion for Summary Judgment be **GRANTED**.

26  **I.      BACKGROUND**

27          Plaintiff is a state prisoner proceeding pro se and in forma pauperis. Plaintiff's 42

28  U.S.C. § 1983 action arises from his transport from California State Prison, Solano

1

("CSPS") to Calipatria State Prison ("CAL") in October 2021. ECF No. 1 at 4. During Plaintiff's transport, his initial restraints (placed by CSPS officers) were removed and replaced with "black box" restraints[1] (placed by Defendant CAL officers). ECF No. 1 at 4. A black box is a mechanism applied to the chain area between the handcuffs. ECF No. 57-7 at 45. Plaintiff alleges these black box restraints were "very painful," and CAL officers Rodriguez and Arvizu ignored Plaintiff's complaints about the pain. ECF No. 1 at 4. For seven hours, Plaintiff wore the black box restraints. *Id.* Plaintiff claims the black box restraints locked his arms in a "restricted, stress position," with the steel digging into his wrists. *Id*. After the transport, Plaintiff noticed his wrists were swollen and had "deep red grooves." ECF No. 1 at 5. His left arm was sore, and he was placed into physical therapy. *Id*.

Plaintiff filed his complaint in March 2022. ECF No. 1. The complaint contained claims against three Defendants: (1) CAL Warden W.L. Montgomery, (2) Correctional Officer Rodriguez, and (3) Correctional Officer Arvizu. ECF No. 1. The Court dismissed Plaintiff's claims against Warden Montgomery pursuant to the Motion to Dismiss, so only Plaintiff's claims against Correctional Officers Rodriguez and Arvizu remain. ECF No. 16. Plaintiff styled his claims as Eighth Amendment, First Amendment, and due process violations, and he sought injunctive relief (specific to Warden Montgomery), $50,000 in compensatory damages, and $50,000 in punitive damages. ECF No. 1 at 4, 7.

Defendants filed the Motion for Summary Judgment before the Court in October 2024, and the Court advised Plaintiff of the requirements for opposing summary judgment pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988). ECF Nos. 57, 58. Thereafter, Plaintiff filed a response, and Defendants filed a reply. ECF Nos. 59, 60.

---

[1] The filings refer to the restraints as both "lockbox" restraints and "black box" restraints. For consistency, the Court will refer to them as "black box" restraints throughout this Report and Recommendation.

## II.    MOTION FOR SUMMARY JUDGMENT

### A.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To satisfy this burden, the moving party must "cit[e] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the nonmoving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

If the moving party meets its initial burden, the burden shifts to the opposing party to establish a genuine issue as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, the opposing party is required to tender evidence via affidavits or admissible discovery material in support of its contention. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citation omitted).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, courts must "draw all reasonable

inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

When the nonmoving party is pro se, the Court has an obligation to construe his pleadings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This rule particularly applies to pro se prisoner civil rights cases, where the Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010); *see also Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) ("Courts in this circuit have an obligation to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims by inmates."). The Court is not, however, required to "comb the record to find some reason to deny a motion for summary judgment" simply because a plaintiff is proceeding pro se. *Tran v. California*, 280 F. App'x 653, 653 (9th Cir. 2008) (quoting *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001)).

### B.    Discussion

#### a.    Eighth Amendment Excessive Force

Defendants contend Plaintiff's Eighth Amendment excessive force claim fails because Defendants' use of black box restraints during transport was necessary and was done without the intent to maliciously or sadistically cause harm, and Plaintiff did not suffer any injury from Defendants' use of black box restraints. ECF Nos. 57 at 11–16, 60 at 1–6.

"In excessive force cases brought under the Eighth Amendment, the relevant inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022) (citation omitted). To determine whether the use of force was malicious and sadistic, the Court considers the five-factor test set forth in *Hudson v. McMillian*, 503 U.S. 1 (1992): "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat

reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Hughes*, 31 F.4th at 1221 (quoting *Furnace v. Sullivan*, 705 F.3d 1021, 1027 (9th Cir. 2013)).

Defendants' summary judgment arguments do not neatly track the *Hudson* factors. Defendants' second argument—which goes to the first *Hudson* factor—is Plaintiff did not suffer any injury from Defendants' use of black box restraints. Defendants rely on two things to support this argument: (1) "[n]o medical professional has told Plaintiff that he was injured as a result of the use of the 'black box' restraint on October 6, 2021," and (2) Dr. Dave Atkin, an orthopedic surgeon, opined via declaration that "[p]lacing an individual's arms in front of the body, significantly below shoulder level, as Plaintiff's arms were placed during transport, would not cause any injury to the human shoulder." ECF Nos. 57 at 10, 57-2.

First, the Court notes while "[t]he absence of serious injury" is "relevant . . . to the Eighth Amendment inquiry, [it] does not end it . . . When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Hudson*, 503 U.S. at 9. Defendants concede lack of serious injury is not dispositive. ECF No. 57 at 16.

Second, the Court notes Plaintiff's injury claim is not wholly unsupported. Plaintiff's medical records make repeated reference to a left shoulder injury he attributes to his time wearing the black box restraints.[2] Plaintiff's medical records show complaints about pain in his left shoulder beginning in November 2021 (the month following transport). ECF No. 57-7 at 38–40. According to medical records provided by Plaintiff, his recurrent left shoulder pain began "around October 2021" and continued through September 2024. ECF

---

[2] Plaintiff's complaint also mentions injury to his wrists. ECF No. 1 at 5. However, Plaintiff's medical records do not mention his wrists (nor does any other evidence provided to the Court), so the Court focuses on the injury most supported by the record. ECF No. 59-7.

No. 59-7 at 2, 4, 5, 19. A January 2022 medical record identifies the history of this injury as "[l]eft anterior shoulder pain since being cuffed hands together in front for seven hours on a transport bus 10/06/2021." ECF No. 59-7 at 5. Similar notes referencing the transport as the source of injury can be found throughout his medical record. *See, e.g.*, ECF No. 59-7 at 2 ("P/I reports he was transported 10/06/2021 and had his UE restrained with box handcuff. He has constant pain L shoulder on ant aspect of shoulder down bicep brachii to mid arm."). However, all of these references are in the form of patient complaints; none are in the form of diagnoses. Plaintiff's medical records also reveal one month after transport, his left shoulder pain was diagnosed as arthritis. ECF No. 59-7 at 7. While Plaintiff's medical records show *he* believes his injury arose from transport, his diagnosis—coupled with Dr. Atkin's declaration—makes this belief implausible.

The Court reads Defendants' next argument—that using the black box restraints during prisoner transport is CAL policy—to roughly apply to *Hudson* factors two and four. In other words, Defendants' use of black box restraints could not have been malicious or sadistic because CAL requires the use of black box restraints for inmate transport as a matter of policy based on the threats posed by transport.

As a preliminary note, Defendants do not provide the Court the CAL inmate transport policy in effect at the time Plaintiff was transported. Instead, Defendants provide a mostly-redacted memorandum amending transportation restraint policy in February 2024, more than two years after Plaintiff's transport. ECF No. 57-7 at 49. According to a declaration submitted by Defendants, they cannot share the CAL transport policy in effect in October 2021 because "[p]olicies related to the use of inmate restraints during transport are considered confidential and cannot be shared with inmates or the public for safety and security reasons." ECF No. 57-3 at 2. Still, the CAL policy regarding black box restraints is not in dispute. Plaintiff acknowledged in his complaint Defendants told him application of the black box was CAL policy. ECF No. 1 at 4. Plaintiff further acknowledges the policy by arguing Defendants could have removed the black box pursuant to CAL policy because "[t]he supervising officer is one of the Defendants. The supervising officer is in the van!"

ECF No. 59-3 at 2. Accordingly, Plaintiff does not appear to dispute the existence of the CAL policy requiring black box restraints during transport.

While Defendants describe the CAL policy, they fail to develop the argument of how the policy affects the legal analysis in this case. A CAL policy of *mandatory* use of black box restraints for prisoner transport arguably negates the possibility of *discretionary* malicious or sadistic use of force to cause harm. Said differently, a policy of using black box restraints tends to indicate "force was applied in a good-faith effort to maintain or restore discipline, [not] maliciously and sadistically to cause harm." *Hughes*, 31 F.4th at 1221 (citation omitted).

With regard to the third *Hudson* factor—the relationship between the need for force and the amount of force used—Defendants broadly argue inmates must be restrained during transport for the safety and security of the inmate and transporting officers, as well as for public safety to prevent escape. ECF No. 57 at 8, 13. This generic argument says nothing of the need to apply *black box* restraints, just the need to apply restraints generally. Defendants explain briefly the purpose of black box restraints is to "protect the handcuff lock from tampering with pick devices." ECF Nos. 57-7 at 47, 49, 57 at 8.

While Defendants' argument is insufficiently developed, courts should be deferential to prison officials in matters of policy. *Hudson*, 503 U.S. at 6 (citing *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986)); *Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015). CAL has assessed the risks posed by inmate transport and determined as a matter of policy black box restraints are necessary. *See Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979) ("Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape . . . Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). CAL's use of black box restraints is not a situation in which "the Eighth Amendment violation is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). Indeed, "[r]estraints that are reasonably related to the institution's interest in maintaining

jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting." *Bell*, 441 U.S. at 540. Accordingly, the Court gives CAL's policy—and Defendants' compliance with that policy—deference.

The fifth *Hudson* factor—any efforts made to temper the severity of the forceful response—is ambiguous on the record before the Court. As a preliminary matter, the Court rejects Defendants' argument Plaintiff's deposition testimony resolves this case. Defendants' claim "by Plaintiff's own admission, he did not inform [Defendants] during the transport that he was experiencing discomfort from the restraints," so Defendants were not on notice he was in pain. ECF No. 57 at 14. But "Plaintiff's own admission" from his deposition, as cited to by the Defendants, looks like this:

> Q. Okay. And then at some point, you get to—and then from the stop at Palm Springs, in that Palm Springs stop to the prison, how long does that take?
> A. At least three hours.
> Q. So then you get to the—and then during the time that you were in the van with the two officers and this unknown inmate, did the officers ever threaten you or make any statements?
> A. No, no.
> Q. Did they ever try to talk to you?
> A. No.
> Q. Did you ever try to talk to them?
> A. No.

ECF No. 57-7 at 12–13.

In this colloquy, Plaintiff is not directly questioned whether he expressed discomfort with the restraints. Presumably, Defendants want the Court to interpret this deposition excerpt as an admission by Plaintiff that he never spoke to Defendants during his CAL transport, meaning he never told them he was in pain. However, there are problems with this reading since there are two obvious ways in which Plaintiff's deposition can be read to be inconsistent with Defendants' theory and consistent with the complaint. First, Plaintiff may have told Defendants *before* the Palm Springs stop he was in pain. Second,

Plaintiff's later deposition remarks make clear he *did* speak to Defendants during the transport, if only to tell them he could not urinate.[3]

Courts must view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). An exception exists "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris,* 550 U.S. 372, 378 (2007). Because Plaintiff's complaint is not "blatantly contradicted" by his deposition, the Court generally credits the facts as provided by Plaintiff.

However, crediting Plaintiff's facts also leads to some ambiguity about Defendants' ability to "temper the severity" of the black box restraints. According to Plaintiff, no adjustments can be made to black box restraints—they are either affixed or not. ECF No. 59-3 at 2, 4. Defendants presumably (though not clearly) dispute this, as declarations from both defendants say "[h]ad Plaintiff complained of pain or discomfort, [we] would have made adjustments to the restraints to increase Plaintiff's comfort level." ECF Nos. 57-4 at 2, 57-6 at 2. Yet Plaintiff has called into question Defendants' ability to temper the severity of their force (the use of the black box restraints) without running afoul of prison policy.

The Court is mindful that excessive force cases "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)). Therefore, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Smith*, 394 F.3d at 701.

---

[3] During a stop "somewhere outside Palm Springs," Plaintiff "told [Defendants] I couldn't urinate when [sic] we started in the van and kept going." ECF No. 57-7 at 10. The occurrence of at least some conversation during the transport is further supported by Plaintiff saying Defendants offered him food and water on the drive. *Id.* at 11.

But the Court is also mindful not to lose the forest through the trees. The core Eighth Amendment inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hughes*, 31 F.4th at 1221. Even construing the facts in favor of Plaintiff, the Court does not see a genuine dispute as to whether the black box restraints were applied and maintained in a good faith effort to maintain order. [4] At most, there are three disputed facts in this case: (1) whether Plaintiff complained to Defendants about the black box restraints, (2) whether Defendants could have adjusted the restraints if Plaintiff complained, and (3) whether Plaintiff's shoulder injury is attributable to the restraints. The Court assumes at this stage the answer to all of these is "yes"—that Plaintiff complained of pain, Defendants could have made adjustments to the black box but did not, and Plaintiff's shoulder injury is attributable to the restraints. But in light of CAL policy, and the absence of any other facts from which malicious intent could be inferred, the Court does not find "whether force was applied in a good-faith effort to maintain or restore discipline" reasonably in dispute. *Id.*

### b.    Qualified Immunity

However, even if the Court found material facts to be in genuine dispute, Defendants also argue Plaintiff's claims fail because Defendants are entitled to qualified immunity. ECF Nos. 57 at 17–19, 60 at 6–7. The Court agrees.

Qualified immunity applies unless Plaintiff can establish: (1) there has been a violation of a constitutional right, and (2) that constitutional right was clearly established at the time of the incident such that a reasonable official would have understood his

---

[4] Despite Plaintiff taking the position the black box could not be adjusted, the Court finds the facts and inferences are more favorable to Plaintiff if adjustments could be made. *See Diebold*, 369 U.S. at 655 (recognizing on summary judgment, a court must view the facts and draw reasonable inferences "in the light most favorable to the party opposing the motion"). The Court has viewed this fact both as Plaintiff asserts (no adjustment can be made) and in the light most favorable to Plaintiff (adjustments can be made); regardless, the Court's conclusion is the same.

behavior violated that right. *Hughes*, 31 F.4th at 1220 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (modifying *Saucier v. Katz*, 533 U.S. 194 (2001)). "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam).

For a right to fall into the "clearly established" category, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)). The plaintiff bears the burden of "point[ing] to prior case law that articulates a constitutional rule specific enough to alert these [officers] in this case that their particular conduct was unlawful." *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017). "The clearly established right must be defined with specificity. [The Supreme Court] has repeatedly told courts . . . not to define clearly established law at a high level of generality. That is particularly important in excessive force cases." *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (internal citation omitted).

Plaintiff brings his excessive force claim as an Eighth Amendment violation.[5] ECF No. 1 at 4. Plaintiff claims in his opposition to summary judgment his claim is brought under the Eighth *and* Fourth Amendments, but this cannot be correct. First, a plaintiff cannot add or amend a claim via opposition to summary judgment. *See* Fed. R. Civ. P.

---

[5] Plaintiff also brings his claim under the "First Amendment" and "due process." ECF No. 1 at 4. However, the Court does not see any facts to support a First Amendment claim. Additionally, the Court reads Plaintiff's "due process" claim to refer to a Fourteenth Amendment excessive force claim. Either an Eighth Amendment excessive force claim is appropriate (if Plaintiff has been convicted) or a Fourteenth Amendment excessive force claim is appropriate (if Plaintiff is a pretrial detainee)—not both. *See Hughes,* 31 F.4th at 1220. The parties do not dispute Plaintiff's status as a convicted prisoner, so the Court addresses only the Eighth Amendment analysis.

15(a); *Patel v. City of Long Beach*, 564 F. App'x 881, 882 (9th Cir. 2014). Second, even a liberal interpretation of Plaintiff's opposition cannot permit Plaintiff to proceed under both the Fourth *and* Eighth Amendments because Plaintiff's status determines the applicable amendment. *See Hughes*, 31 F.4th at 1220 (explaining the Fourth Amendment protects "free citizens" and the Eighth Amendment protects "convicted prisoners"). Neither party has disputed at the time of the relevant transport, Plaintiff was a convicted prisoner. Thus, his claim is properly brought under the Eighth Amendment.

This distinction between excessive force under the Fourth and Eighth Amendments matters. "The validity of the [excessive force] claim must . . . be judged by reference to the *specific constitutional standard which governs that right*, rather than to some generalized 'excessive force' standard." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (emphasis added). In other words, there is no "generic 'right' to be free from excessive force, grounded not in any particular constitutional provision." *Id.* at 393. In Fourth Amendment excessive force cases, the standard is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. In contrast, under the Eighth Amendment, the excessive force inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (quoting *Hudson*, 503 U.S. at 7). "Differing standards under the Fourth and Eighth Amendments are hardly surprising: the terms 'cruel' and 'punishments' clearly suggest some inquiry into subjective state of mind, whereas the term 'unreasonable' does not." *Graham*, 490 U.S. at 398. A clearly established right under the Fourth Amendment, then, may not be a clearly established right under the Eighth Amendment.

From the cases cited and arguments made, the parties appear to agree "[i]t is well-established that overly tight handcuffing can constitute excessive force." *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004). But this proposition is drawn from Fourth Amendment case law, not Eighth Amendment case law. All the handcuffing cases cited by

Defendants are Fourth Amendment excessive force claims—*Wall v. Cnty. of Orange*, 364 F.3d 1107 (9th Cir. 2004); *Meredith v. Erath*, 342 F.3d 1057 (9th Cir. 2003); *LaLonde v. Cnty. of Riverside*, 204 F.3d 947 (9th Cir. 2000); *Alexander v. Cnty. of Los Angeles*, 64 F.3d 1315 (9th Cir. 1995); and *Smith v. City of Hamlet*, 394 F.3d 689 (9th Cir. 2005). Drawing from these cases, Defendants distinguish Plaintiff's case by arguing it does not involve "repeated requests to loosen the handcuffs" or "other forms of violence accompanying the handcuffing." ECF No. 57 at 13–14. But the Court sees a simpler way to distinguish Plaintiff's case from those listed above—it involves a different constitutional right and a different constitutional standard.

Plaintiff's cited case law in opposition encounters the same problem. In addition to the cases Defendants cite, Plaintiff cites to *Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989); *Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir. 1993); *James v. Lee*, 485 F. Supp. 3d 1241 (S.D. Cal. Aug. 1, 2020); *Santos v. Gates*, 287 F.3d 846 (9th Cir. 2002); and *Thompson v. Lake*, 607 F. App'x 624 (9th Cir. 2015). ECF Nos. 59-2 at 4-5, 59-3 at 1, 10. These are all Fourth Amendment cases apart from *James*, which is a Fourteenth Amendment pretrial detainee case. *See Kingsley*, 576 U.S. at 400–01 (distinguishing excessive force claims brought by convicted prisoners under the Eighth Amendment from excessive force claims brought by pretrial detainees under the Fourteenth Amendment).

The parties' conflation of excessive force handcuffing under the Fourth and Eighth Amendments can be explained by the conflation found in countless court opinions. *Compare Candler v. Mallot*, No. 14-cv-0363-GEB-KJN, 2015 WL 2235674, at *7–10 (E.D. Cal. May 12, 2015) (citing Fourth Amendment handcuffing cases in support of an Eighth Amendment handcuffing claim) *and Younger v. Alvarez*, No. 24-cv-00098-KES-SAB, 2024 WL 5242836 at *4 (E.D. Cal. Dec. 30, 2024) (same) *with MacFalling v. Nettleton*, No. 17-02399-SVW-AFM, 2017 WL 3498616, at *6 (C.D. Cal. Aug. 15, 2017) (distinguishing a claim of overly tight handcuffing under the Eighth Amendment from similar Fourth Amendment claims). In fact, Plaintiff cites two unpublished Eighth

Amendment excessive force district court cases[6] for the Court's consideration, ECF No. 59-2 at 5, but both also rely on Fourth Amendment case law in conducting their Eighth Amendment qualified immunity analysis.

The Court does not believe Fourth Amendment excessive force case law is wholly irrelevant to an Eighth Amendment excessive force claim. The factors considered by the Court in determining whether force is excessive may overlap between the two types of claims, so in that way, the case law can be somewhat comparative. *Compare Wall*, 364 F.3d at 1111 (assessing the severity of the crime at issue, whether the suspect poses an immediate threat to others' safety, and whether the suspect is resisting in the Fourth Amendment context) *with Hughes*, 31 F.4th at 1221 (assessing the extent of injury suffered, the need for application of force, the relationship between the need and amount of force used, the perceived threat the inmate poses, and efforts made to temper the severity of force in the Eighth Amendment context). But the Court declines to find, for qualified immunity purposes, a right "clearly established" under the Fourth Amendment is necessarily "clearly established" under the Eighth Amendment. *See United States v. Waldman*, 835 F.3d 751, 754 (7th Cir. 2016) ("Sometimes, it is within the bounds of the Eighth Amendment for correctional officers to use force that would be unlawful outside of prison walls.").

---

[6] Many Circuits do not consider district court opinions in determining if a constitutional right has been clearly established for purposes of qualified immunity. *See*, *e.g.*, *Kalka v. Hawk*, 215 F.3d 90, 100 (D.C. Cir. 2000) (Tatel, J., concurring) (collecting cases). But because the Ninth Circuit has voiced support for considering district court opinions, the Court has considered Plaintiff's cited Eighth Amendment cases. *See Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996) ("Absent binding precedent, we look to all available decisional law, including the law of other circuits and district courts, to determine whether the right was clearly established"); *Tribble v. Gardner*, 860 F.2d 321 (9th Cir. 1988) (citing *Ward v. Cnty. of San Diego*, 791 F.2d 1329, 1332 (9th Cir. 1986)). *But see Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (citing *Wilson v. Layne*, 526 U.S. 603, 617 (1999)) ("[T]he prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction.").

14

There is no requirement there be a "case directly on point" for a right to be "clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The constitutional questions presented by this case is not "beyond debate." Does this "right" exist under the Eighth Amendment simply because it exists under the Fourth Amendment? Is Plaintiff's case properly considered an "overly tight handcuffing" case if the black box restraints cannot be adjusted?[7] Is the recognized Fourth Amendment "right against overly tight handcuffing" coextensive with a "right against the use of black box restraints"?

The Court rejects the assumption it should impute the parties' "clearly established" Fourth Amendment case law into this Eighth Amendment context. However, that is not the end of the qualified immunity analysis. "[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (modified on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009)). Here, Defendants applied the black box restraints during transport as dictated by CAL policy. Though not dispositive, policies and regulations are relevant to determining whether a reasonable officer would have known that his conduct was unreasonable. *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059–62 (9th Cir. 2003); *Hope*, 536 U.S. at 741–42; *Furnace*, 705 F.3d at 1027 (9th Cir. 2013). Because a relevant

---

[7] Courts in the Ninth Circuit have treated "overly tight handcuffing" and "painful handcuffing" similarly. *See Ramorino v. Cnty. of Los Angeles*, No. 23-cv-00090-SVW-JC, 2024 WL 3468328, at *10 n.9 (C.D. Cal. May 31, 2024) (collecting cases). But it appears Plaintiff advocates for the "right against the use of black box restraints." He alleges the addition of the black box to the handcuffs "placed my body in pain immediately . . . The lockbox handcuffs had made my left arm real sore . . . I cannot take that transport with that [sic] lockbox chains on. I feel like I was tortured. The lockbox handcuffs feels like my whole body was wrap [sic] up in steel." ECF No. 1 at 4–5. He also alleges that black box restraints cannot be adjusted (only removed), which presents a different issue than overly tight handcuffs, which can be loosened. ECF No. 59-3 at 2, 4.

policy mandated the use of black box restraints during transport, the Court finds it difficult to say "the state of the law in [2021] gave [Defendants] fair warning that their alleged treatment of [Plaintiff] was unconstitutional." *Hope*, 536 U.S. at 741.

Thus, even if the Court accepted it should conflate Fourth and Eighth Amendment jurisprudence in its qualified immunity analysis, qualified immunity would still be appropriate. Qualified immunity shelters "all but the plainly incompetent or those who knowingly violate the law," and the Court cannot find officers who applied (or did not remove) Plaintiff's black box restraints in accordance with prison policy were "plainly incompetent" or "knowingly violate[d] the law." *Ashcroft*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Even if Plaintiff had a clearly established Eighth Amendment right, Defendants had "a reasonable but mistaken belief that [their] conduct was lawful." *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003).

## III.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation and (2) **GRANTING** Defendants' Motion for Summary Judgment.

Within fourteen (14) days from the date of service of these filings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after the objections are filed. The parties are advised failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

**IT IS SO ORDERED**.

Dated:  March 24, 2025

HON. MICHELLE M. PETTIT
United States Magistrate Judge

16

22-cv-0678-JLS-MMP