UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MICHAEL JOSEPH RHINEHART,

Plaintiff,

v.

W.L. MONTGOMERY, et al.,

Defendants.

Case No.:  22-CV-678 JLS (MMP)

**ORDER:**

**(1) OVERRULING PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION;**

**(2) ADOPTING REPORT AND RECOMMENDATION RECOMMENDING THE COURT GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND**

**(3) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

(ECF Nos. 57, 68, 72–73, 75, 78–79)

Presently before the Court is Defendants M. Arvizu and J. Rodriguez (collectively, "Defendants") Motion for Summary Judgment and Memorandum of Points and Authorities in Support thereof ("Mot.," ECF No. 57), to which Plaintiff Michael Rhinehart filed an Opposition ("Opp'n," ECF No. 59-2) and Defendants filed a Reply ("Reply," ECF No. 60).

1

Magistrate Judge Michelle M. Pettit issued a Report and Recommendation ("R&R," ECF No. 68) advising the Court to grant Defendants' Motion.  Plaintiff initially filed two Objections ("1st Obj.", "2d Obj."; ECF Nos. 72, 73), to which Defendants filed a Response ("1st Resp.," ECF No. 75).  After being granted leave of Court, Plaintiff filed an additional Objection ("3d Obj.," ECF No. 78), to which Defendant filed a Response ("2d Resp.," ECF No. 79).  Having carefully considered Judge Pettit's R&R, the Parties' arguments, and the law, the Court **OVERRULES** Plaintiff's Objections, **ADOPTS** the R&R, and **GRANTS** Defendants' Motion for Summary Judgment.

**BACKGROUND**

Judge Pettit's R&R contains a thorough recitation of the relevant background and evidence.  *See* R&R at 1–2.  Nonetheless, given Plaintiff's objections to the factual background relied upon by Judge Pettit, the Court sets forth anew the evidence it considers relevant to Defendants' Motion and Plaintiff's Objections to the R&R.

**I.    General Allegations**

Plaintiff, an inmate proceeding pro se, is challenging certain actions taken during his transport from California State Prison, Solano ("CSPS") to Calipatria State Prison ("CAL") on October 6, 2021.  ECF No. 1 ("Compl.") at 4.  Two correctional officers, Defendants Arvizu and Rodriguez, escorted Plaintiff during the second half of that transport, and Plaintiff alleges that those two Defendants impermissibly used excessive force in violation of the Eighth Amendment of the United States Constitution during the trip.  *Id.*; Declaration of Michael Joseph Rhinehart ("Rhinehart Decl.") ¶ 2, ECF No. 59-4.

Plaintiff's excessive force charge stems from Defendants' use of black box restraints.  Rhinehart Decl. ¶ 2.  As expressed by a correctional officer who describes himself as a "subject matter expert in the use of restraints and restraint policy for the Transportation unit at [CAL]," black box restraints are "utilized to prevent an inmate from picking the lock of the handcuffs and becoming unrestrained."  Declaration of D. Washington ("Washington Decl.") ¶¶ 2, 7.  That officer goes on to explain how the restraints are applied:

> When an inmate was restrained using a "black box," they were first placed in handcuffs with their arms in front of them and their wrists parallel. The "black box" was then applied to the area between the handcuffs. The use of the "black box" did not alter the position of an inmate's arms, shoulders, and elbows, which were in the same position as they would be if the inmate was only placed in handcuffs. Further, an inmate was still able to eat, drink, and use the restroom with the "black box" restraint on the handcuffs.

*Id.* ¶ 9. At the time of Plaintiff's transport on October 6, 2021, the California Department of Corrections & Rehabilitation ("CDCR") had a policy of requiring inmates to be restrained using handcuffs, black box restraints, and waist chains during transport. *Id.* ¶ 6; ECF No. 57-7. Ex. E. All correctional officers at CAL assigned to the Transportation unit were purportedly trained on proper use of black box restraints, including their mandatory use without supervisory authorization providing otherwise and the policy of adjusting restraints if an inmate complains of pain. Washington Decl. ¶ 10. Both Arvizu and Rodriguez submit that they were trained on the use of restraints upon their assignment to the CAL Transportation unit, noting their understanding that "[i]nmates are restrained during transport for officer safety and to prevent escape." Declaration of M. Arvizu ("Arvizu Decl.") ¶ 2, ECF No. 57-6; Declaration of J. Rodriguez ("Rodriguez Decl.") ¶ 2, ECF No. 57-4.

According to a declaration filed by Plaintiff, Defendants utilized black box restraints during his October 6, 2021 transport. Rhinehart Decl. ¶ 3. Plaintiff states that he informed Defendants twice at the beginning of the trip of "discomfort and pain" due to the black box restraints, but Defendants replied that they were bound by policy to use the restraints. *Id.* Two hours later, Plaintiff complained about the pain once again, but Defendants did not reply. *Id.* The record lacks any further substance about Plaintiff's complaints, omitting any detail about whether the complaints were limited to Plaintiff's wrists or some other part of his body. For their part, Defendants deny that Plaintiff at any point during the trip complained of any pain or discomfort to his wrists or arms. Arvizu Decl. ¶ 6; Rodriguez Decl. ¶ 6. Both Defendants assert that they would have adjusted the restraints in the event

Plaintiff had in fact complained. Arvizu Decl. ¶ 6; Rodriguez Decl. ¶ 6. And they both state that their use of the restraints was done in accordance with CDCR policy. Arvizu Decl. ¶ 7; Rodriguez Decl. ¶ 7.

After arriving at CAL, intake officers removed Plaintiff's black box restraints, revealing swollen wrists that had "deep red grooves" in them. *Id.* ¶ 5. The next day, Plaintiff filed a grievance challenging CDCR's policy of using black box restraints, ECF No. 59-6 at 2–4, but the Office of Grievances disapproved of the grievance, concluding that Defendants had abided by "policy and procedures and the training provided to them on the application of restraints," *id.* at 1. Plaintiff appealed the decision, but that appeal was also denied. *See* ECF No. 59-5 at 1–2. In denying the appeal, CDCR noted that the nurse who saw Plaintiff upon his arrival at CAL "did not recall any complaints regarding the black box, and that there was nothing documented in [his] medical file." *Id.* at 1.

Nevertheless, not long after the October 2021 transport, Plaintiff's medical records began to indicate pain in Plaintiff's left shoulder. The earliest instance of left shoulder pain found in the record arises from a service check on November 15, 2021, wherein Plaintiff complained of sharp shoulder pain. ECF No. 59-7 at 4. Plaintiff was placed into physical therapy, and though he continued to complain of left shoulder pain over the next two years, the pain decreased in intensity to the point where Plaintiff, as of today, is no longer in need of physical therapy. *Id.* at 5–20; Deposition of Michael Joseph Rhinehart ("Rhinehart Dep.") at 29:15–20, ECF No. 57-7, Ex. A.

While Plaintiff maintains that the use of black box restraints caused his shoulder injury, Defendants retained a medical expert, Dr. Dave Atkin, who opined that "there was no plausible mechanism of injury during the transport for any acute injury to Plaintiff's left shoulder." Declaration of D. Atkin, M.D. ("Atkin Decl.") ¶ 10, ECF No. 57-2. Rather, relying on his review of the relevant medical records, Dr. Atkin's view is that Plaintiff suffers from osteoarthritis, which manifests in transient episodes of pain. *Id.* ¶ 11. Consistent with Dr. Atkin's view, the medical record reveals myriad appointments when Plaintiff complained of shoulder pain, but none where a medical professional attributed the

shoulder pain to the use of black box restraints. *See, e.g.*, ECF No. 59-7 at 5 (identifying an arthritic condition after an x-ray taken on November 17, 2021); *id.* at 10 (noting a possible rotator cuff tear); *id.* at 16 (assessing possibly inflamed rotator cuff tendons); *id.* at 19 (listing osteoarthritis of left shoulder as an ongoing medical problem). Plaintiff confirmed this characterization of his medical record during his deposition. Rhinehart Dep. at 29:11–14 (responding in the negative to a question asking if "a medical professional ever told [Plaintiff] that [he] ha[d] injuries as a result of" Defendants' use of the black box restraints).

## II.    Procedural History

Plaintiff initiated this civil rights action on March 29, 2022, asserting violations of his First, Eighth, and Fourteenth Amendment rights against Arvizu; Rodriguez; and CAL warden, W.L. Montgomery. *See* Compl. After the Complaint's Eighth Amendment claim survived *sua sponte* screening under 28 U.S.C. § 1915(d), ECF No. 3, Defendants moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(6), ECF No. 6. On February 27, 2023, the Court granted the Motion to Dismiss with respect to Warden Montgomery but denied the Motion with respect to Arvizu and Rodriguez. *See* ECF No. 16. The case then moved through discovery, ultimately leading to Defendants' Motion for Summary Judgment, which was filed on October 14, 2024. Mot.

Following full briefing, Judge Pettit issued her R&R on March 24, 2025, setting a deadline for objections of April 7, 2025. *See* R&R at 16. On April 7, 2025, Plaintiff filed three documents styled as objections, which Judge Pettit construed as two Motions to Reset the Mandatory Settlement Conference and a Motion for Extension of Time to File Objection. *See* ECF Nos. 69–71, 74. Judge Pettit denied Plaintiff's request to reset the mandatory settlement conference, but she granted his request for additional time to file objections. *See* ECF No. 74. Before his extension request was granted, Plaintiff had already filed two Objections, ECF Nos. 72–73, to which Defendants filed a Response, ECF No. 75. Still, Plaintiff requested another extension to file more thorough objections due to a delay in his receipt of Judge Pettit's Order granting his first extension request. *See* ECF

No. 76.    The Court granted this second request, resulting in Plaintiff filing another Objection, ECF No. 78, to which Defendants filed a second Response, ECF No. 79.    Thus, the Court proceeds against the backdrop of three operative Objections (ECF Nos. 72–73, 78) and two operative Responses (ECF Nos. 75, 79).

## LEGAL STANDARDS

### I.     Report and Recommendation

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district court's duties in connection with a magistrate judge's R&R.    The district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).    However, in the absence of timely objection, the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."    Fed. R. Civ. P. 72 advisory committee's note (citing *Campbell v. U.S. Dist. Ct.*, 501 F.2d 196, 206 (9th Cir. 1974)).

### II.     Summary Judgment

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense.    Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."    Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).    Material facts are those that may affect the outcome of the case.    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).    A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."    *Id.*    When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."    *Id.* at 255.

/ / /

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* (quoting Fed. R. Civ. P. 56(c)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

# ANALYSIS

## I.    Summary of the R&R and Plaintiff's Objections Thereto

Defendants seek summary judgment on Plaintiff's Eighth Amendment excessive force claims. *See* R&R at 4. The R&R proceeds in two parts. First, the R&R concludes that, construing all facts in favor of Plaintiff, there is no genuine dispute as to whether Defendants applied and maintained the black box restraints "in a good faith effort to maintain order." *Id.* at 10. In reaching that conclusion, the R&R identifies three disputed facts, namely: "(1) whether Plaintiff complained to Defendants about the black box restraints, (2) whether Defendants could have adjusted the restraints if Plaintiff complained, and (3) whether Plaintiff's shoulder injury is attributable to the restraints." *Id.* However, even if all three were to be resolved in Plaintiff's favor, the R&R finds that Plaintiff still has not produced evidence sufficient to create a triable issue of excessive force under the five-factor test established in *Hudson v. McMillian*, 503 U.S. 1 (1992). *Id.*

Second, the R&R concludes that, even if a reasonable jury could find in favor of Plaintiff on his excessive force claims, those claims are otherwise barred by qualified immunity. *Id.* at 16. Accordingly, the R&R recommends granting Defendants' Motion. *Id.*

Plaintiff's objections to the R&R are broadly dispersed across three different filings, some of which present duplicative arguments. Having parsed the filings, the Court has extracted four discrete objections, each of which warrants its own independent discussion. Those four objections are summarized below.

First, a large portion of Plaintiff's filings relate to his objection to the R&R's reliance on Dr. Atkin's declaration (the "Atkin Declaration"). On this point, Plaintiff primarily argues that the Atkin Declaration is inherently flawed because Dr. Atkin considered an incomplete medical record in reaching his opinions and otherwise failed to account for Plaintiff's version of events. *See* 1st Obj. at 3; 2d Obj. at 2; 3d Obj. at 5–6. Plaintiff identifies what he views as false or inconsistent statements in the Atkin Declaration that render the declaration defective. *See* 3d Obj. at 6.

Second, Plaintiff objects to the R&R in a more general sense because, in his view, the R&R makes factual determinations that are contradicted by the record, thus not satisfying the summary judgment standard of resolving factual disputes in favor of the non-moving party. Specifically, Plaintiff contends that (1) the R&R improperly rejects Plaintiff's claim that he was injured, 1st Obj. at 2–3; (2) improperly assumes that Plaintiff never informed Defendants that he was in pain during the transport, *id.* at 9; and (3) improperly finds that the black box restraints were not the cause of Plaintiff's injuries, *id.* at 6.

Third, Plaintiff argues that the R&R reaches the wrong legal conclusion on his Eighth Amendment claims. Focusing on the fact that Defendants could have relieved his pain but chose not to and the fact that Plaintiff was not resisting arrest or creating an emergency during the transport, Plaintiff objects to the R&R's conclusion that Defendants' use of force was not malicious or sadistic. *Id.* at 7–9.

/ / /

Finally, Plaintiff objects to the R&R's legal conclusion that Defendants are entitled to qualified immunity. Arguing that it was clearly established as a matter of law that overly tight handcuffs can constitute excessive force, Plaintiff contends that Defendants should have been on notice that their refusal to loosen Plaintiff's handcuffs during the transport was an unlawful violation of his constitutional rights. 3d Obj. at 14–15.

The Court reviews *de novo* those portions of Judge Pettit's R&R to which Plaintiff objects and reviews for clear error the remainder of the R&R.

## II. Analysis of Plaintiff's Objections

### A. The Atkin Declaration

Plaintiff's first Objection is not neatly presented as a motion to exclude expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), but it closely resembles what such a motion might look like. Though Plaintiff does not take issue with Dr. Atkin's qualification to present expert testimony, he does point out several inconsistencies that he perceives with Dr. Atkin's opinions. For instance, Plaintiff argues that Dr. Atkin failed to consider all of the relevant evidence, including Plaintiff's entire medical history, Plaintiff's grievance, and Plaintiff's Complaint. 1st Obj. at 3. Such a critique might be thought to challenge whether an expert's "testimony is based on sufficient facts or data." Fed. R. Evid. 702(b). Plaintiff also argues that Dr. Atkin made false assertions in his declaration, such as Dr. Atkin's claim that Plaintiff's medical records contain no mention of wrist injuries. 3d Obj. at 3. This type of challenge sounds like one questioning whether Dr. Atkin's opinions "rest[] on a reliable foundation." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Daubert*, 509 U.S. at 597). Thus, despite neither Party briefing a proper *Daubert* challenge, the Court construes Plaintiff's Objection as one.

Regardless of how one characterizes Plaintiff's first Objection, the R&R did not err by considering Dr. Atkin's declaration. The standard for expert testimony is set forth in Federal Rule of Evidence ("Rule") 702, which provides that:

/ / /

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Ninth Circuit has explained that the trial court's role is one of "a gatekeeper, not a fact finder," merely ensuring "that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (quoting *Primiano*, 598 F.3d at 564–65). So long as the expert's testimony satisfies this threshold showing, it should be admitted even if it does not conclusively establish a medical condition. *See Primiano*, 598 F.3d at 565 (reasoning that medical expert testimony "need not be conclusive because 'medical knowledge is often uncertain' (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006))). "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury." *City of Pomona*, 750 F.3d at 1044.

As an initial matter, at least some of Plaintiff's concerns rest on a misreading of the Atkin Declaration. For example, Plaintiff contends that Dr. Atkin opined on the basis of an incomplete medical record and without the benefit of reviewing Plaintiff's version of events. *See* 1st Obj. at 3; 2d Obj. at 2. But in his declaration, Dr. Atkin stated that his "professional medical opinions are based on [his] review of Plaintiff's Complaint, Plaintiff's deposition transcript, the declarations of M. Arvizu and J. Rodriguez, [his] analysis of the medical records documenting the medical care provided to Plaintiff by CDCR, and [his] professional training and experience." Atkin Decl. ¶ 9. In the same

paragraph, Dr. Atkin further clarified that he only attached "*the most relevant* medical records . . . to the Appendix of Exhibits as Exhibit D." *Id.* Thus, Plaintiff's concern that the exhibits attached to Defendants' Motion for Summary Judgment are incomplete is not persuasive.

Plaintiff's reservations about Dr. Atkin's "incorrect statements" are no more compelling. One such incorrect statement that Plaintiff highlights is Dr. Atkin's assertion that "Plaintiff did not complain of any pain in [his] left shoulder [and] declined physical therapy." 3d Obj. at 6 (quoting Atkin Decl. ¶ 11). But this quote is taken out of context. Preceding the quote is Dr. Atkin's qualification that he was specifically referring to a medical appointment on November 24, 2021. Atkin Decl. ¶ 11. The medical records submitted by Defendants do indeed show that Plaintiff affirmatively reported no arthritic pain in his left shoulder during that visit. *See* ECF No. 57-7 at 40.

That said, the Court acknowledges at least arguable inconsistencies in the Atkin Declaration. The declaration concludes by stating, "[t]o the extent Plaintiff is claiming injury to his wrists during the transport, I did not see any evidence of wrist complaints or injury in Plaintiff's medical records." Atkin Decl. ¶ 15. Technically speaking, Dr. Atkin appears to be correct that no evidence of a wrist injury is present *in the medical records*. Attached as an exhibit to Plaintiff's summary judgment Opposition, however, is a copy of his grievance, filed one day after the transport, containing a clear reference to his swollen wrists and "deep groves [sic] in [his] wrist." ECF No. 59-6 at 3–4. Dr. Atkin does not account for those comments, which were made contemporaneously with the incident in question. This furnishes at least some basis for believing that Dr. Atkin's opinions may have overlooked certain parts of the evidentiary record.

However, notwithstanding any minor inconsistencies that may be present in the Atkin Declaration, Plaintiff has not persuaded the Court that the R&R's reliance on said declaration was misplaced. When it comes to medical experts, "[w]here the foundation [of the testimony] is sufficient, the litigant is 'entitled to have the jury decide upon [the experts'] credibility, rather than the judge.'" *Primiano*, 598 F.3d at 566 (quoting

*Sandoval-Mendoza*, 472 F.3d at 654).  It would, thus, be improper in its gatekeeping role for the Court to refuse to consider the Atkin Declaration, which is better suited for questioning on cross examination.  *See id.* at 564 ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").  Plaintiff does not dispute that Dr. Atkin is qualified to render an opinion in this case with his three decades of experience as an orthopedic surgeon, and the Court is otherwise assured that Dr. Atkin's opinions have "a reliable basis in the knowledge and experience of the relevant discipline."  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).  Accordingly, the Court **OVERRULES** Plaintiff's Objection to the extent he argues the R&R improperly relied on the Atkin Declaration.[1]

### B.    Resolution of Factual Disputes

Plaintiff next objects to the way in which the R&R resolves factual disputes.  Specifically, Plaintiff argues that (1) the R&R rejects his claim of being injured during the transport, 1st Obj. at 2; (2) the R&R infers that Plaintiff did not inform Defendants of his pain during the transport, 3d Obj. at 9; and (3) the R&R incorrectly concludes that there is no evidence in the record that the black box restraints were the cause of Plaintiff's injuries, 1st Obj. at 6.  While Plaintiff is correct as a matter of black letter law that factual disputes are to be resolved in favor of the non-moving party on summary judgment, the R&R did not err on that issue.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) ("On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion.").

In reaching its conclusion, the R&R takes painstaking care to sift through the factual contentions of both sides to determine whether there exists a genuine dispute of material

---

[1] Moreover, in the interests of completeness, the Court adds that the R&R assumes for argument's sake that Plaintiff did indeed suffer a shoulder injury as a direct result of the black box restraints.  That analytical step nullifies any potential error that consideration of the Atkin Declaration may have theoretically introduced to Judge Pettit's analysis.

fact.  The R&R recognizes that excessive force cases often involve fact-intensive inquiries that should "sparingly" be resolved on summary judgment.  R&R at 9 (quoting *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005)).  The R&R then expressly acknowledges the presence of three facts that are disputed between the Parties.  *Id.* at 10.  Those three facts are: "(1) whether Plaintiff complained to Defendants about the black box restraints, (2) whether Defendants could have adjusted the restraints if Plaintiff complained, and (3) whether Plaintiff's shoulder injury is attributable to the restraints."  *Id.*  Finally, for purposes of its Eighth Amendment analysis, the R&R resolves each of those three disputes in Plaintiff's favor, ultimately concluding that, even if Plaintiff's version of events is accepted as truth, there still would not be "a genuine dispute as to whether the black box restraints were applied and maintained in a good faith effort to maintain order."  *Id.*  The Court cannot find any instances where the R&R improperly resolves a factual dispute against Plaintiff.  Accordingly, the Court **OVERRULES** Plaintiff's Objection to the extent he argues the R&R improperly applies Federal Rule of Civil Procedure 56(a) in resolving Defendants' Motion for Summary Judgment.

### C.    *Excessive Force Under the Eighth Amendment*

Plaintiff's third basis upon which he objects to the R&R is that Judge Pettit erred as a matter of law in concluding that Defendants did not violate Plaintiff's Eighth Amendment right to be free from excessive force.  Plaintiff advances this Objection by pointing to disputes of fact as to whether he was injured by Defendants' use of black box restraints and whether Defendants declined to loosen the restraints when Plaintiff asked them to.  *See* 1st Obj. at 7–10; 3d Obj. at 8–10.  One of the central premises of Plaintiff's argument is his assertion that Ninth Circuit law firmly establishes that a prison official violates the Eighth Amendment when he declines to loosen a prisoner's handcuffs when asked to do so.  1st Obj. at 8 (collecting cases).  On this Objection, the Court agrees with the R&R's conclusion that Defendants did not use excessive force against Plaintiff.

The Eighth Amendment protects prisoners from the infliction of cruel and unusual punishment.  U.S. Const. amend. VIII.  An Eighth Amendment violation occurs only when

an inmate is subjected to the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Jeffers v. Gomez*, 267 F.3d 895, 900 (9th Cir. 2001). "Force does not amount to a constitutional violation . . . if it is applied in a good faith effort to restore discipline and order and not 'maliciously and sadistically for the very purpose of causing harm.'" *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002) (quoting *Whitley*, 475 U.S. at 320–21); *see also Hudson v. McMillian*, 503 U.S. 1, 6 (1992). "When prison officials maliciously and sadistically use force to cause harm," *Hudson*, 503 U.S. at 9, the Supreme Court has recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

Under *Hudson*, the "core judicial inquiry" requires consideration of several relevant factors: (1) "the need for application of force," (2) "the relationship between that need and the amount of force used," (3) the "threat 'reasonably perceived by the responsible officials,'" (4) "'any efforts made to temper the severity of a forceful response,'" and (5) the extent of the injury suffered. *Id.* at 7 (quoting *Whitley*, 476 U.S. at 321). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

"[T]he absence of an emergency may be probative of whether the force was indeed inflicted maliciously or sadistically." *Jordan v. Gardner*, 986 F.2d 1521, 1528 n.7 (9th Cir. 1993) (en banc). The Supreme Court has made clear that the Eighth Amendment may be violated by the use of excessive force against a prison inmate "'[even] when the inmate does not suffer serious injury.'" *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (quoting *Hudson*, 503 U.S. at 4). While the extent of an inmate's injury is relevant to the Eighth Amendment inquiry, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* at 38.

"[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'"  *Wilkins*, 559 U.S. at 38 (quoting *Hudson*, 503 U.S. at 9).  Indeed, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Id.* at 37–38.  "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."  *Id.* at 38 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The Court begins by adopting the same analytical approach as the R&R: resolving all factual disputes in Plaintiff's favor.  The most straightforward method for doing so is to simply assume the truth of the declaration, signed under penalty of perjury, that Plaintiff attaches to his summary judgment Opposition.  *See United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999) (reasoning that "the judge must treat [a] fact as genuinely at issue" when the non-moving party on summary judgment "submits proper affidavits by individuals with personal knowledge").  From there, the material portions of Plaintiff's narrative can be summarized as follows.

While Plaintiff was being transported between prisons under Defendants' supervision on October 6, 2021, he was placed in black box restraints.  Rhinehart Decl. ¶ 2–3.  Those restraints caused Plaintiff "discomfort and pain," prompting him to alert Defendants twice within the first twenty minutes that he was uncomfortable.  *Id.* ¶ 3.  Defendants declined each time, citing the CDCR policy requiring black box restraints during transport.  *Id.*  Plaintiff complained once again two hours later with the same result.  *Id.*  When the restraints were eventually removed at the destination, Plaintiff noticed that his hands "were swollen" and that he had "deep red grooves in [his] wrists."  *Id.* ¶ 5.  Plaintiff filed a grievance the next day noting his concerns, *id.* ¶ 7, and soon thereafter he began physical therapy for pain in his left shoulder after several complaints to his medical providers, *see* ECF No. 59-7 at 9.  Based on his declaration and other notes recorded during his medical appointments, Plaintiff avers that he had no preexisting pain in his left shoulder

before the transport.  *See* Rhinehart Decl. ¶ 11; ECF No. 59-7 at 5.  Thus, in Plaintiff's estimation, the black box restraints caused his shoulder injury because the restraints placed him in a "stress position."  Rhinehart Decl. ¶ 9.

Taking these facts as true, the Court agrees with the R&R that a reasonable jury could not find that Defendants violated Plaintiff's right to be free from excessive force under the Eighth Amendment by using black box restraints.  As a starting point, the Court notes that Plaintiff's remaining excessive force claims arise out of his desire to be free from the use of black box restraints.  *See* R&R at 15 n.7 ("Plaintiff advocates for the 'right against the use of black box restraints.'").  Thus, despite the myriad cases Plaintiff cites in his summary judgment Opposition standing for the proposition that "overly tight handcuffing may constitute excessive force," Opp'n at 10 (collecting cases), the thrust of Plaintiff's argument challenges Defendants' insistence on using black box restraints during the transport on October 6, 2021, not the tightness of the restraints.  From that premise, no genuine dispute of material fact exists as to whether Defendants' use of the black box restraints constituted "a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (quoting *Hudson*, 503 U.S. at 6).

Here, the first three *Hudson* factors, which can be considered together based on the nature of Plaintiff's claims, weigh in Defendants' favor.  At the time of Plaintiff's transport from CSPS to CAL, the unrefuted record shows that CDCR had a policy requiring "inmates being transported to be restrained utilizing waist chains, handcuffs and 'black box' restraints."  Washington Decl. ¶ 6; *see* ECF No. 57-7 at 49 (revealing a policy change in February 2024 away from the mandatory use of black box restraints during transport).  This policy, according to a tenured official within the CAL Transportation unit, served "to prevent an inmate from picking the lock of the handcuffs and becoming unrestrained."  *Id.* ¶ 7.  Plaintiff does not rebut Defendants' evidence demonstrating the existence of the black box policy, so the Court accepts that Defendants' use of black box restraints during Plaintiff's transport was done in accordance with prison directive.

Defendants' mere compliance with CDCR policy weighs strongly against an inference that they applied force "maliciously and sadistically to cause harm." *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022) (citation omitted). Plaintiff contends that he posed no "immediate threat to the safety of the officer[s]," Opp'n at 2 (quoting *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011)), and that the black box restraints "lock[] the body into one position," subjecting him to a painful experience during the transport, Rhinehart Decl. ¶ 9. But even assuming these facts to be true, the "core judicial inquiry" is whether the force was applied "maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 39 (quoting *Hudson*, 503 U.S. at 7). When it comes to their motivation for using black box restraints during the transport, the Court finds that Defendants' refusal to depart from established prison policy does not demonstrate the requisite subjective intent. This conclusion is even stronger in light of the deference this Court must afford to prison officials "in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979).

The fourth factor, on the other hand, weighs slightly in Plaintiff's favor. On this point, there is a genuine factual dispute. Plaintiff claims that Defendants declined to adjust the black box restraints multiple times when asked to do so, *see* Rhinehart Decl. ¶ 3, yet Defendants both deny that Plaintiff ever "complain[ed] of any pain or discomfort to his wrists or arms from the restraints," Rodriguez Decl. ¶ 6; Arvizu Decl. ¶ 6. Resolving this factual dispute in Plaintiff's favor as it must, the Court assumes that Plaintiff did indeed request a black box restraint adjustment during the trip, which went ignored by Defendants.

Still, Plaintiff's version of events provides only a modicum of support to his claims that Defendants' use of the black box restraints "was wanton and unnecessary." *Hudson*, 503 U.S. at 7. At most, Plaintiff asked three times over a multi-hour trip for Defendants to adjust the restraints, yet there is no other evidence that Plaintiff was in physical pain necessitating adjustment. Nor is there evidence that there existed any possible adjustments to the black box restraints that would have relieved Plaintiff of his shoulder pain. While,

as Plaintiff posits, unnecessarily painful handcuffs may support a claim of excessive force, the circumstances surrounding those cases typically involve hostile affirmative acts taken by officers in the course of an arrest. *See Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) (rejecting summary judgment in favor of officers when they "grabbed [the plaintiff] by her arms, forcibly threw her to the ground, and, twisting her arms, handcuffed her"); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (rejecting summary judgment in favor of officers when the plaintiff stated "that the handcuffs were put on in an abusive manner"). Here, by contrast, Plaintiff's theory is that Defendants used excessive force against him by the mere act of applying black box restraints, an action that was taken consistent with CDCR policy. Thus, even under Plaintiff's version of events where Defendants could have relieved him of pain by adjusting the black box restraints, Defendants' actions are not as extreme as those in other excessive force cases that have survived summary judgment. *See Wall v. County of Orange*, 364 F.3d 1107, 1109 (9th Cir. 2004) (rejecting summary judgment in favor of officer when he "handcuffed [the plaintiff's] hands 'extremely tight' behind his back, pick [the plaintiff] up by his handcuffed arms and threw [the plaintiff] 'upside down' and head first into the patrol car"). And Plaintiff has not produced evidence demonstrating that lesser force could have been used during a prisoner transport under CDCR policy.

The fifth factor involves a slightly more nuanced approach due to Plaintiff's multiple purported injuries. As was true with the fourth factor, there is a genuine factual dispute as to whether Plaintiff was injured as a result of Defendants' use of black box restraints. True, consistent with Defendants' position, the record is devoid of any medical evidence providing a causal connection between Plaintiff's asserted shoulder injury and the black box restraints. At best, Plaintiff's medical file reveals an arthritic condition in Plaintiff's left shoulder that, in Plaintiff's mind, can be traced back to the transport on October 6, 2021. *See, e.g.*, ECF No. 59-7 at 5 (noting, on January 3, 2022, Plaintiff's historical "[l]eft anterior shoulder pain since being cuffed hands together in front for seven hours on a transport bus 10/06/2021"); *id.* at 8 (reiterating, on March 14, 2022, that Plaintiff "started

having pain L shoulder when he was transported in a van and had his UE hand cuffed to chain and was unable to move for the 7 hour drive").  Conversely, with support from the Atkin Declaration, Defendants submit that "there was no plausible mechanism of injury during the transport for any acute injury to Plaintiff's left shoulder."  Atkin Decl. ¶ 10.

Notwithstanding this one-sided expert testimony, the Court assumes for purposes of resolving Defendants' Motion for Summary Judgment that Plaintiff was injured as a result of the black box restraints.  Although Plaintiff's shoulder injury does not appear in the medical record until over one month after his transport, the temporal proximity of Plaintiff's shoulder complaints to the incident in question could potentially lead a reasonable jury to find that fact in Plaintiff's favor.  And Plaintiff's grievance, filed just one day after the transport, provides a corroborative contemporaneous account that Plaintiff suffered pain when the black box restraints were applied.  *See* ECF No. 59-5 at 5 ("The lock box made it difficult to move, it as if my whole body was tie up [sic].  I was in pain immediately.  The box created pain and a stress position.").  Further, while the R&R focuses on Plaintiff's left shoulder injury as opposed to his wrist injury based on the lack of wrist-related documentation in the medical records, Plaintiff's contemporaneous account of the transport in his grievance does in fact note that his wrists were swollen when the restraints were removed.  *See id.*

But even if the Court traces both Plaintiff's shoulder and wrist injuries to the black box restraints, these two injuries have disparate severity levels that demand separate treatment under *Hudson*.  As for Plaintiff's shoulder injury, the medical record evinces a chronic condition requiring physical therapy.  If caused by the black box restraints, as Plaintiff suggests, the shoulder injury would not constitute the type of "de minimis" harm that might weigh strongly against an excessive force finding.  *See Hudson*, 503 U.S. at 10. As for Plaintiff's wrist injury, by contrast, there is no evidence that Plaintiff ever sought treatment for his injured wrists or that he suffered anything more than a "slight abrasion." *Luong v. City and County of San Francisco*, No. C11-5661 MEJ, 2012 WL 5869561, at *5 (N.D. Cal. Nov. 19, 2012).  An excessive force claim generally does not rise to the level of

a constitutional violation where a prisoner experiences transitory pain while in handcuffs that does not result in any lasting harm. *See, e.g.*, *Sinclair v. City of Grandview*, 973 F. Supp. 2d 1234, 1258 (E.D. Wash. 2013); *Hong Ha v. City of Liberty Lake*, No. CV-08-382-RHW, 2010 WL 4065491, at *6 (E.D. Wash. Oct. 15, 2010) (collecting cases).

Weighing the *Hudson* factors against one another under a *de novo* review, the Court reaches the same conclusion as the R&R that Defendants' use of black box restraints did not, as a matter of law, constitute excessive force under the Eighth Amendment. The record indisputably shows that the CAL Transportation unit had a policy of requiring black box restraints during Plaintiff's transport on October 6, 2021. *See* Washington Decl. ¶ 10 ("However, transportation officers were prohibited from discontinuing use of the 'black box' restraint during transports without the authorization of a supervising officer."). Further, Plaintiff's description of how the restraints were applied seamlessly aligns with the training manual that describes how the process is supposed to work. *Compare* Rhinehart Decl. ¶ 8, *with* ECF No. 57-7 at 46–47. The Court appreciates that the black box restraints may have caused Plaintiff discomfort and some amount of pain. *See* Rhinehart Decl. ¶ 9 ("The effects of the handcuffs is pain. It locks the body into one position, any movement is painful."). But the Court is also mindful that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9). And here, Defendants' compliance with prison policy does not amount to an "*unreasonable* injury" to Plaintiff's wrist or shoulder "unless supported by factual allegations detailing specific actions that caused specific injuries in the application of the handcuffs." *See Hong Ha*, 2010 WL 4065491, at *6 (emphasis in original). Accordingly, there are no genuine disputes of material fact preventing the Court from determining as a matter of law that Defendants Arvizu and Rodriguez did not apply the black box restraints "maliciously or sadistically to cause harm." *Hudson*, 503 U.S. at 7; *see also Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993) ("Summary judgment is not precluded simply because there is a dispute of

some facts in a case.").  The Court, therefore, **OVERRULES** Plaintiff's Objection on this ground.

### D.    *Qualified Immunity*

In objecting to the R&R's determination that Arvizu and Rodriguez are entitled to qualified immunity, Plaintiff mostly focuses on the merits of the alleged constitutional violations.  *See* Obj. 3 at 14.  For the reasons provided above, however, the Court finds that there is no genuine issue of material fact as to Defendants' liability for Plaintiff's claims. And to the extent Plaintiff relies on Ninth Circuit precedent to demonstrate that it is well established that overly tight handcuffs can constitute excessive force, the Court agrees with Judge Pettit that such a determination under the Eighth Amendment does not necessarily flow inevitably from the same determination under the Fourth Amendment.  *See Hughes*, 31 F.4th at 1221 (recognizing that the Eighth Amendment sets a higher standard than that of the Fourth Amendment).

"In determining whether an officer is entitled to qualified immunity, [courts] consider (1) whether there has been a violation of a constitutional right, and (2) whether that right was clearly established at the time of the officer's alleged misconduct."  *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  Courts may "exercise sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.  If either prong is dispositive, the court need not analyze the other prong.  *See id.* at 236–37.

Here, because the Court has found that there was no constitutional violation occasioned by the incident identified above, the Court need not assess whether the law was "clearly established."  Rather, the Court concludes that Defendants Arvizu and Rodriguez are entitled to qualified immunity on the ground that the evidence produced on summary judgment does not make out a constitutional violation.  *See Perez v. United States*, 103 F. Supp. 3d 1180, 1206 (S.D. Cal. 2015) (citing *Hope v. Pelzer*, 536 U.S. 730, 736 (2002)).  Accordingly, the Court **OVERRULES** Plaintiff's Objection on this ground.

**III.    Analysis of the Remainder of the R&R**

Neither Plaintiff nor Defendants object to the remainder of Judge Pettit's R&R. Having found no clear error, the Court **ADOPTS** the remainder of the R&R.

**CONCLUSION**

In light of the foregoing, the Court **OVERRULES** Plaintiff's Objections (ECF Nos. 72–73, 78), **ADOPTS** Judge Pettit's R&R (ECF No. 68), and **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 57).  As this Order concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated:  August 19, 2025

Hon. Janis L. Sammartino
United States District Judge

22-CV-678 JLS (MMP)